IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| CYNTHIA M. MOLINARO, | : | Case No. 1:23-cv-402 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| TRIHEALTH, INC., et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion to Strike Materials in Support of Defendants' Motion for Summary Judgment (Doc. 27). The Court construes the Motion as Objections, which have since been fully briefed. (*See* Docs. 30, 31.) For the following reasons, Plaintiff's Objections (Doc. 27) are **OVERRULED**.

## BACKGROUND

Plaintiff Cynthia Molinaro worked for Defendants TriHealth, Inc. and TriHealth Hospital, Inc., (collectively, "TriHealth") as a Staff Registered Nurse from 1999 to 2022. (Molinaro Dep., Doc. 22, Pg. ID 846, 853-55.) On June 3, 2021, Plaintiff suffered a workplace injury after slipping on water that had overflowed from an ice machine. (*Id.* at Pg. ID 889.) Plaintiff reported the workplace injury and visited TriHealth's Occupational Medicine Department for treatment. (*Id.* at Pg. ID 892.)

The same day, TriHealth's Workers' Compensation Case Manager Monika Heid notified Plaintiff that a workers' compensation claim had been opened for her injury. (Molinaro Dep., Doc. 22, Pg. ID 898; Workers' Compensation Letter, Doc. 22-11.) Plaintiff also received notice that TriHealth's third-party administrator, Sedgwick, would be handling her workers' compensation claim. (Molinaro Dep., Doc. 22, Pg. ID 898; Workers' Compensation Letter, Doc. 22-11.) On June 21, 2021, Plaintiff had a follow-up appointment at TriHealth's Occupational Medicine Department, and Physician's Assistant Lilian Sedacca completed a workers' compensation form known as a "Physician's Report of Work Ability" (also known as MEDCO-14). (Molinaro Dep., Doc. 22, Pg. ID 902-03; MEDCO-14, Doc. 22-13.)

On July 15, 2021, Plaintiff again slipped on water from an ice machine at work, re-injuring herself. (Molinaro Dep., Doc. 22, Pg. ID 904.) Plaintiff reported this injury the next day, and visited TriHealth's Occupational Medicine Department, where Physician's Assistant Deborah Wiater ("PA Wiater") treated her. (*Id.* at Pg. ID 905-06.) PA Wiater completed a MEDCO-14 during that visit, which referenced only Plaintiff's original injury from June 3, 2021. (*Id.* at Pg. ID 909-11; Second MEDCO-14, Doc. 22-15.) PA Wiater submitted a request for workers' compensation to cover Plaintiff's MRI for her June 3 injury; Sedgwick approved this claim on July 22, 2021. (Molinaro Dep., Doc. 22, Pg. ID 913.) Plaintiff also submitted a new workers' compensation claim for the June 15 injury; however, Sedgwick did not validate this claim. (*Id.* at Pg. ID 934-35.)

Plaintiff's numerous workers' compensation claims caused confusion regarding her medical restrictions and reimbursement requests. (Molinaro Dep., Doc. 22, Pg. ID 941-

2

42.) Because Sedgwick had rejected her June 15 injury claim, subsequent requests related to that injury were denied. (*Id.* at Pg. ID 937-39.) To resolve this issue, TriHealth consolidated Plaintiff's claims with the allowed conditions of cervical sprain, thoracic sprain, lumbar sprain, left shoulder sprain, and right wrist sprain. (*Id.* at Pg. ID 943-44.) Thus, Sedgwick finally approved Plaintiff's request for reimbursement of her orthopedics referral, massage therapy, and additional physical therapy. (*Id.* at Pg. ID 946.)

Plaintiff's workers' compensation attorney filed a motion with the Ohio Bureau of Workers' Compensation ("Ohio BWC") to include additional injuries on her claim based on findings from her MRI. (Molinaro Dep., Doc. 22, Pg. ID 944-45, 949-50.) By October 16, 2021, unable to complete her work duties because of her injuries, Plaintiff took a leave of absence. (*Id.* at Pg. ID 970-71.) During the ensuing months, Plaintiff's medical restrictions and return-to-work date were repeatedly modified, eventually resulting in medical restrictions lasting until August 1, 2022. (*Id.* at Pg. ID 1010.) This timeframe allowed Plaintiff to request coverage for biceps tendinosis and to undergo surgery for her injuries. (*Id.* at Pg. ID 999, 1001.) Plaintiff admitted that she could not perform her job functions with these medical restrictions. (*Id.* at Pg. ID 1010-11.)

On July 1, 2022, TriHealth sent Plaintiff a letter informing her that her leave of absence was due to expire on July 18, 2022, or 275 days from her first day of leave on October 16, 2021. (Molinaro Dep., Doc. 22, Pg. ID 1024; LOA Letter, Doc. 22-51, Pg. ID 1331.) The letter invited Plaintiff to contact TriHealth if she could return to work, with or without a reasonable accommodation. (LOA Letter, Doc. 22-51.)

Meanwhile, Plaintiff's workers' compensation case manager, Janine Loyer, notified Plaintiff that her position had been filled. (Molinaro Dep., Doc. 22, Pg. ID 1031.) Following communications with Human Resources, Plaintiff's request for additional leave was denied. (*Id.* at Pg. ID 1042.) On August 5, 2022, TriHealth notified Plaintiff that her leave of absence expired and her employment had been terminated as of August 2, 2022. (*Id.*; Termination Letter, Doc. 22-59.)

On August 29, 2022, Plaintiff filed a complaint against TriHealth with the Ohio BWC, alleging, in part, that TriHealth caused delays and denials of various treatments under her workers' compensation claim. (Molinaro Dep., Doc. 22, Pg. ID 1059; BWC Findings, Doc. 22-64.) The Ohio BWC denied Plaintiff's complaint throughout every stage of the process, so Plaintiff appealed to the BWC Self-Insuring Employers Evaluation Board ("BWC Board"). (Molinaro Dep., Doc. 22, Pg. ID 1059; BWC Findings, Doc. 22-64.) The BWC Board found that Plaintiff's claims lacked merit and dismissed her complaint. (Findings, Doc. 22-64.) Notably, the BWC Board found that TriHealth and Sedgwick had responded timely and appropriately to Plaintiff's claims and requests. (*Id.*)

In January 2023, Plaintiff applied for a Leave of Absence and Disability Case Management Coordinator position with TriHealth. (Molinaro Dep., Doc. 22, Pg. ID 1053-54.) Plaintiff did not receive an interview for the position. (Pipes Dep., Doc. 19, Pg. ID 537-38; Hoover Decl., Doc. 24, Exhibit C, ¶ 6.)

TriHealth filed its Motion for Summary Judgment on May 12, 2025, which has been fully briefed. (*See* Docs. 25, 26, 29.) Plaintiff then filed a Motion to Strike Materials in

4

Support of Defendants' Motion for Summary Judgment, which has also been fully briefed. (*See* Docs. 27, 30, 31.)

## LAW & ANALYSIS

Plaintiff filed her Motion to Strike seeking to exclude some materials that TriHealth uses in support of its Motion for Summary Judgment. Specifically, Plaintiff contends that the Court should not consider Paragraphs 4 and 5 of the Declaration of Danielle Shrimpton, as well as BWC's Informal Conference Findings ("BWC Document") as they are irrelevant. (Motion, Doc. 27, Pg. ID 1738; *see* BWC's Informal Conference Findings, Doc. 22-64.) As a preliminary matter, TriHealth points out that, at the summary judgment stage, a motion to strike is the improper vehicle with which to object to a piece of evidence. (Response, Doc. 30, Pg. ID 1897.) The Court agrees. "As a threshold matter, the 2010 amendments to the rules governing summary judgment rendered motions to strike inappropriate at the summary judgment stage, directing parties to instead file an objection." *Druhot v. Smith*, No. 2:22-CV-543, 2024 WL 1049838, at *5 (S.D. Ohio Mar. 11, 2024). That said, the Court will construe the Motion as an Objection, pursuant to Federal Rule of Civil Procedure 56(c)(2). *Id.*

Federal Rule of Civil Procedure 56(c)(2) states that, at the summary judgment stage, a party may object that material cited to support or dispute a fact would not be admissible as evidence. Subsection (4) declares that an affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The affiant, however, does not need to personally witness

5

the events to have personal knowledge of them. *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 Fed. App'x 717, 722 (6th Cir. 2017). Rather, an affidavit based on the reports of others satisfies the personal knowledge requirement. *Id.* The review of regularly kept business records can also form the basis for personal knowledge. *Lloyd v. Midland Funding, LLC,* 639 Fed. App'x 301, 304 (6th Cir. 2016). And, in litigation involving a corporation, there is no obligation to select an affiant "with personal knowledge of the events in question, so long as the corporation proffers a person who can answer regarding information reasonably available to the corporation." *Id.* (citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotations omitted)). Plaintiff objects on the grounds of relevance and lack of personal knowledge. The following analysis examines each ground individually.

### I. Relevance

Plaintiff first objects to Paragraph 5 of Shrimpton's Declaration and the BWC Document because they are irrelevant, and therefore, inadmissible. (Objection, Doc. 27, Pg. ID 1740.) Plaintiff further claims that, even if these documents are relevant, they are still excludable under Rule of Evidence 403, as their prejudicial value outweighs their probative value. (*Id.*) The Court will address each argument in turn.

#### a) Rule 401

Under Federal Rule of Evidence 401, evidence is relevant if it "has a tendency to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Only relevant evidence is admissible. Fed. R. Evid. 402. In her Declaration, Shrimpton describes how Plaintiff's BWC Complaint was denied at every

6

stage of appeal, how Plaintiff appealed to the BWC Board, and how—during the BWC Board's Internal Conference that she attended—the Board issued a determination dismissing Plaintiff's BWC Complaint as invalid. (Objection, Doc. 27, Pg. ID 1741.) The BWC Document, meanwhile, represents the Board's written determination itself. (*See* Doc. 22-64.) Plaintiff states that the purported evidence is irrelevant both to TriHealth's arguments in its Motion for Summary Judgment and to whether Plaintiff can demonstrate a prima facie case of workers' compensation discrimination under Ohio Revised Code § 4123.90. (*Id.* at Pg. ID 1740-41.) To this point, Plaintiff cites case law suggesting that, to establish a prima facie case of retaliation, the underlying workers' compensation claim need not be successful. (*Id.* at Pg. ID 1740 (citing *Onderko v. Sierra Lobo, Inc.*, 69 N.E.3d 679, 686 (Ohio 2016)).) Rather, Plaintiff only must show that she engaged in the protected activity of filing the workers' compensation claim. (*Id.*) Moreover, Plaintiff's challenged adverse actions, her termination and TriHealth's failure to rehire her, occurred eighteen months prior to the BWC Board's determination. (*Id.* at Pg. ID 1741-42.) As such, from Plaintiff's perspective, the determination cannot be relevant to the retaliation claim. (*Id.* at Pg. ID 1742.) And, Plaintiff points out that TriHealth never relies on the declaration to support any of its arguments in the Motion for Summary Judgment, further evincing its immateriality. (*Id.*)

In response, TriHealth highlights that Plaintiff's retaliation claim alleges that TriHealth "retaliated against her by delaying and denying treatment through her workers' compensation claim." (Response, Doc. 30, Pg. ID 1899-1900.) Therefore, according to TriHealth, Paragraph 5 and the BWC Document serve to show that Plaintiff's

7

complaints of improper delay and denial were deemed meritless. (*Id.* at Pg. ID 1900.) This evidence makes it "more probable" that TriHealth processed Plaintiff's workers' compensation claim "within the established standards of the workers' compensation system," supporting its contention that it did not retaliate against her. (*Id.*)

But, in her Reply, Plaintiff reiterates that this determination came over a year after Plaintiff experienced the adverse actions on which she bases her retaliation claim. (Reply, Doc. 31, Pg. ID 1907.) Shrimpton's statements in Paragraph 5 and the BWC Document "do not address . . . whether [TriHealth] acted with retaliatory animus." (*Id.* (citing *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009)).) The determination that TriHealth "managed to process [Plaintiff's] claims within the outer limits of what the Ohio agency deems permissible" has no bearing on whether TriHealth retaliated against Plaintiff for making the claims. (*Id.*) Moreover, Plaintiff argues that, if the Court finds the determination marginally relevant, "the document speaks for itself," and Shrimpton's testimony summarizing it is not relevant.

At this point, the Court finds it necessary to re-examine Plaintiff's workers' compensation retaliation claim. Plaintiff first alleges that TriHealth's own delays in providing Plaintiff with access to medical care through her workers' compensation claims caused her leave of absence time to expire. (Am. Compl., Doc. 4, ¶¶ 78-79.) The exhaustion of her leave, caused "primarily" by TriHealth, led TriHealth to terminate Plaintiff. (*Id.* at ¶¶ 79-81.) Plaintiff then alleges that TriHealth, in retaliation to her filing the workers' compensation claims, carried out several adverse actions against her: (1)

8

TriHealth refused to extend her leave; (2) TriHealth terminated her; and (3) TriHealth refused to rehire her. (*Id.* at ¶¶ 80-83.)

Without yet reaching the merits of the retaliation claim, the Court notes that the central issue in the retaliation claim is not that TriHealth engaged in undue delay, but rather that Plaintiff's mere claim for workers' compensation caused TriHealth to retaliate against her with adverse actions. However, as TriHealth points out, in response to its Motion for Summary Judgment, Plaintiff argues that "[TriHealth] . . . seized on every opportunity to delay or deny approval of [Plaintiff's] claims . . . . [TriHealth's] retaliatory campaign of delay and denial was the cause of [Plaintiff's] delayed treatments and delayed surgery," which eventually hindered her recovery, in turn resulting in her termination. (Response to Motion for Summary Judgment, Doc. 26, Pg. ID 1613.) As such, Plaintiff has used TriHealth's handling of her claim to show TriHealth's retaliatory conduct. Plaintiff cannot simultaneously hold that TriHealth improperly delayed and denied her claims as part of its retaliatory campaign while also arguing that the Board's determination of TriHealth's timely claims-handling is not relevant. Accordingly, the Court finds that Paragraph 5 of Shrimpton's Declaration and the BWC Document are relevant.

### b) Rule 403

The question before the Court now is whether the possible prejudice from this evidence precludes its admissibility. Federal Rule of Evidence 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Plaintiff argues that Rule 403 applies here. (Motion, Doc.

9

27, Pg. ID 1744.) Central to Plaintiff's argument is that TriHealth does not use this evidence in support of its summary judgment motion, so it cannot have significant probative value. (*Id.*) Yet, this contention is false, as TriHealth points to sections of its Reply in Support where it relies on this very evidence to respond to Plaintiff's arguments. (*See* Reply in Support, Doc. 29, Pg. ID 1893.) The Court is thus not persuaded by this argument.

Plaintiff also maintains that a jury would likely confuse the issues and misconstrue the Board's determination, supplanting that determination with the jury's own opinion on TriHealth's retaliatory conduct. (Motion, Doc. 27, Pg. ID 1744.) This risk is especially high since the BWC Document and declaration do not reveal what evidence the Board considered when making its determination. (*Id.*) To Plaintiff, because of this, its trustworthiness "cannot be properly evaluated," and this Court should not give high probative value to the Board's decision. (*Id.*) Indeed, precedent suggests that "administrative agency determinations offer little probative value while also posing a great risk of unfair prejudice." (*Id.* (collecting cases).)

On the first point, TriHealth suggests that the concern for jury confusion is better suited for a motion in limine in preparation for trial. (Response, Doc. 30, Pg. ID 1901-02.) At this stage, there is no risk of jury confusion. (*Id.*) To the second point concerning the trustworthiness of an agency's decision, TriHealth notes that the cases Plaintiff cites in order to highlight the risk of prejudice from administrative decisions are not applicable. (*Id.* at Pg. ID 1902.) To start, in those cases, the courts either excluded the evidence on motions in limine, or they allowed the evidence at the summary judgment stage but

carefully weighed the proper value to give it. (*Id.*) And, the administrative decisions in those cases were either unemployment decisions, which apply a wholly separate legal standard than discrimination cases, or letters of determination and probable cause findings that opine on the ultimate issue of the lawsuit. (*Id.*) Here, though, TriHealth points out that the BWC Board "made no such determinations on questions of discriminatory or retaliatory motive." (*Id.*) Accordingly, the case law is inapplicable in TriHealth's estimation. (*Id.*) Moreover, this evidence is trustworthy when examining the factors laid out in *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009). (*Id.*) Contrary to Plaintiff's assertion, TriHealth states that the BWC Board's findings "specifically indicated" the evidence it considered in reaching its conclusions, and that the Board is comprised of independent individuals who are not related to TriHealth in any way. (*Id.* (citing *Alexander*, 576 U.S. at 563).)

In her Reply, Plaintiff does not address the risk of prejudice weighed against the evidence's probative value, except to mention that Shrimpton's Declaration is redundant to the BWC Document. (Doc. 31, Pg. ID 1908.) But, the Court already determined that Shrimpton's Declaration provides more context for the BWC Document by explaining the review process that preceded Plaintiff's appeal; it is thus not redundant. Further, the Court agrees with TriHealth's arguments. Plaintiff has not pointed to case law applicable to the BWC determination at issue here. At the summary judgment stage, the risk of jury confusion is low and such a concern may be better suited for a motion in limine. But, if the Court does consider the risk of jury confusion at this stage, it finds that a jury is unlikely to supplant an agency's opinion for its own when the agency's opinion does not

11

opine on the ultimate issue before the jury. Moreover, the Court agrees that the Board's decision here is trustworthy, as it was based on specific evidence and decided by a neutral party. Thus, the risk of prejudice is low and does not substantially outweigh the probative value of the evidence from Shrimpton's Declaration and the BWC Document.

## II. Lack of Personal Knowledge

Plaintiff also objects to both Paragraphs 4 and 5 of Shrimpton's Declaration for the independent reason that she made the statements without the requisite personal knowledge. (Motion, Doc. 27, Pg. ID 1745.) The Court will first address Paragraph 4 and then move to Paragraph 5.

### a) Paragraph 4

In Paragraph 4 of Shrimpton's Declaration, she describes that she performed work on Plaintiff's workers' compensation claim as a case manager with TriHealth. (*See* Shrimpton Decl., Doc. 24-4, ¶ 4.) Plaintiff asserts that TriHealth declared Paragraph 4 as privileged, and thus it should be stricken. (Motion, Doc. 27, Pg. ID 1745.) To this point, Plaintiff states that, during Shrimpton's deposition, she did not answer whether she had worked on Plaintiff's workers' compensation case because her attorney indicated that doing so implicated "attorney-client privileged communications." (*Id.* at Pg. ID 1746.) But now, in her Declaration, she says that she did, in fact, work on Plaintiff's case as a case manager. (*Id.*) According to Plaintiff, Shrimpton cannot invoke privilege to avoid a question but then provide that supposed privileged information elsewhere. (*Id.*)

TriHealth, in its Response, argues that Plaintiff has misstated Shrimpton's testimony and invocation of attorney-client privilege. (Doc. 30, Pg. ID 1898.) According

to TriHealth, Shrimpton was asked during the deposition whether she had ever worked on Plaintiff's case, which could have implicated instances when she reviewed the case at the request of counsel. (*Id.*) Thus, attorney-client privilege was raised as a "precautionary measure and limited to any potential reference to privileged communications." (*Id.*) Shrimpton was "never advised not to answer" and indeed she "proceeded to respond to Plaintiff's counsel's question." (*Id.*; *see also* Shrimpton Dep., Doc. 16, Pg. ID 190-91.) In its Reply, Plaintiff merely restates that "[TriHealth] cannot use the evidence in the Declaration to support their summary judgment motion where their counsel also asserted the same information was privileged." (Reply, Doc. 31, Pg. ID 1907.)

Having reviewed the deposition testimony, the Court agrees with TriHealth. Counsel for TriHealth indeed objected to the extent the question invoked attorney-client privilege, but counsel instructed Shrimpton that she may answer. (Shrimpton Dep., Doc. 16, Pg. ID 190-91.) Shrimpton then answered that she worked on Plaintiff's workers' compensation case "[n]ot when it was active at that time," and clarified she worked as a case manager after Plaintiff was terminated. (*Id.*) This answer did not provide privileged information, nor does it differ from the statement contained in Paragraph 4. Thus, contrary to Plaintiff's contention, TriHealth is not attempting to use attorney-client privilege as both a shield and sword. Plaintiff then in part argues Paragraph 5 should be excluded because, without Paragraph 4, Shrimpton has failed to lay the proper foundation for her statements in Paragraph 5. (Motion, Doc. 27, Pg. ID 1747.) However, as the Court has determined that Paragraph 4 is admissible, this argument fails.

    b) **Paragraph 5**

Nevertheless, Plaintiff argues that Paragraph 5, which describes the outcome of Plaintiff's complaint with Ohio BWC, is inadmissible because Shrimpton's work on the compensation case occurred after Plaintiff left. (Motion, Doc. 27, Pg. ID 1747.) Accordingly, most of the facts in Paragraph 5 are not based on her personal observations. (*Id.* (citing *Jones v. City of Middletown*, No. 1:06-CV-7, 2007 WL 9729105, at *6 (S.D. Ohio Aug. 10, 2007)).) However, TriHealth points out that Shrimpton testified that she "reviews information regarding litigation" in her role as a case manager. (Response, Doc. 30, Pg. ID 1899.) And, "an individual's review of relevant business records satisfies the personal knowledge requirement." (*Id.* (citing *United States v. Nugent*, No. 5:16-CV-380, 2017 WL 4249775, at *4 (E.D. Ky. Sept. 25, 2017)).) Plaintiff does not address this argument in her Reply.

Regardless, the Court agrees with TriHealth. As the Court established earlier, the review of regularly kept business records can form the basis for personal knowledge. *Lloyd*, 639 Fed. App'x at 304. And, in litigation involving a corporation, there is no obligation to select an affiant "with personal knowledge of the events in question, so long as the corporation proffers a person who can answer regarding information reasonably available to the corporation." *Id.* (citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotations omitted)). Here, as a case manager assigned to Plaintiff's case, Shrimpton reviewed TriHealth's regularly kept business records, that is, Plaintiff's workers' compensation case file. (*See* Shrimpton Dep., Doc. 16, Pg. ID 190-91.) Further, as TriHealth is a corporation, it is permitted to proffer an affiant who can answer regarding information reasonably available to TriHealth; its own case file, which includes

14

the BWC's findings on that case, certainly is reasonably available to TriHealth. According to the record, Shrimpton meets these criteria, and Plaintiff has not presented any evidence to the contrary. Thus, Paragraph 5 is admissible.

## CONCLUSION

Based on the foregoing reasons, Plaintiff's Objections (Doc. 27) are not well-taken and are **OVERRULED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND